Filed 9/1/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIBER PAVING COMPANY, INC.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>REXFORD INDUSTRIAL REALTY<br>AND MANAGEMENT, INC.,<br><br>Defendant and Respondent. | G058406<br><br>(Super. Ct. No. 30-2018-00977441)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge. Reversed and remanded.

Callari & Summers and Andrew C. Callari for Plaintiff and Appellant.

Law Offices of Tom S. Chun and Tom S. Chun for Defendant and Respondent.

\*        \*        \*

## INTRODUCTION

California law recognizes a tort cause of action against a noncontracting party—also called a stranger to the contract—who intentionally interferes with the performance of a contract. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 513-514 (*Applied Equipment*).) Caliber Paving Company, Inc. (Caliber) sued Rexford Industrial Realty and Management, Inc. (Rexford) for intentional interference with a contract between Caliber and Steve Fodor Construction (SFC). The trial court granted Rexford's motion for summary judgment on the ground that Rexford, although not a party to the contract, had an economic interest in it and therefore could not be liable in tort for intentional interference with contract. Caliber appealed from the judgment; we reverse.

In a case of first impression in this district, we hold that, under *Applied Equipment*, a defendant who is not a party to the contract or an agent of a party to the contract is a noncontracting party or stranger to the contract and, regardless whether the defendant claims a social or economic interest in the contractual relationship, may be liable in tort for intentional interference with contract. *Applied Equipment* does not confer immunity for intentional interference with contract on noncontracting parties having a social or economic interest in the contractual relationship from liability. We also conclude that Caliber submitted admissible evidence sufficient to meet its burden of raising a triable issue of fact as to whether Rexford interfered with the contract between SFC and Caliber.

## FACTS

Rexford owns and operates industrial property throughout Southern California. In 2017, Rexford hired SFC to make certain improvements to a Rexford property in Carson (the property). The scope of work included repaving the parking lot on the property.

SFC hired Caliber to perform the repaving of the parking lot. The contract between SFC and Caliber (the SFC/Caliber contract) divided the parking lot into four areas, with a separate cost to repave each area. Caliber completed the work for area one in June 2017.

SFC and Caliber agreed the work on the next area would start on September 11, 2017. Caliber could not start the work on that area on September 11 because there were trucks and trailers parked on the jobsite.

From this point, SFC's and Caliber's versions of events materially differ. SFC's sole owner and officer, Steve Fodor, declared that he learned on September 11 that Caliber had arrived earlier than expected on the jobsite and left because there were trucks and trailers parked there. Fodor declared that at 11:02 a.m. on September 11 he received an e-mail from Caliber with a "move on" charge of $7,500. A few hours later the charge increased to $15,000. Fodor believed the charge was unjustified and refused to pay it. In the following days, SFC and Caliber had discussions to resolve the dispute but Caliber refused to return to work and complete the job unless SFC agreed to pay the move on charge. Unable to resolve the dispute, Fodor hired another paving subcontractor to complete the repaving of the parking lot.

Caliber's president, Darin Gilchriese, declared it was imperative for Caliber to begin work in the next area to repave on September 11, 2017 in order to complete the work on September 12 but trucks and trailers parked in the jobsite had prevented Caliber from starting on September 11. When those circumstances were explained to SFC, it agreed to reschedule the work to September 14 and 15. Gilchriese declared the move on charge was authorized by the SFC/Caliber contract and SFC was contractually obligated to pay it. At about 6:00 p.m. on September 13, SFC canceled the work. Gilchriese testified in his deposition and declared that Fodor had told him that Rexford's primary representative to SFC, Andy Wilson, had directed Fodor to "kick [Caliber] off the job or hire somebody else." Caliber's account executive, Jeffrey Neilan, declared that the SFC

3

onsite project manager, Darin Maddox, had told him "Rexford wanted Caliber off the job."

## PROCEDURAL HISTORY

Caliber sued SFC for breach of the SFC/Caliber contract and sued Rexford for intentional interference with that contract. Rexford moved for summary judgment on two grounds: (1) Rexford was not a stranger to the contract and therefore could not be liable for interfering with it and (2) the only evidence Caliber had to prove Rexford interfered with the contract between Caliber and SFC was inadmissible double hearsay.

The trial court concluded the hearsay evidence offered by Caliber was admissible because "each layer" of hearsay fell within an exception to the hearsay rule. The court granted Rexford's motion for summary judgment, however, on the ground Rexford was not a stranger to the contract. The court stated: "In *Applied Equipment* [,*supra*,] 7 Cal.4th 503 at pages 513-514, the Supreme Court held that non-contracting parties, i.e., strangers to the contract, could be held liable for intentionally interfering with contract. It referred to the non-contracting parties as 'outsiders' who have 'no legitimate social or economic interest in the contractual relationship.' Two lines of authority have developed as to what the Supreme Court meant. . . . Suffice it to say, it does not appear that the local District Court of Appeal has weighed in on how to apply the Supreme Court's holding. [¶] Here, Rexford is the owner of the real property; the contract involves improvements to that real property; and the express contracting parties are effectively the general contractor and a subcontractor. It is hard to envision a situation where the alleged interfering party does not have a more direct economic interest in a contract than one between its general contractor and a subcontractor over how the property is improved. Based on that relationship, it would appear, under *Applied Equipment*, that for purposes of analysis Rexford cannot be held liable for interference

4

with the contract between the general contractor and the subcontractor." Judgment in Rexford's favor was entered in July 2019.

## DISCUSSION

### I.

### Standard of Review

We review orders granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) Summary judgment is warranted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

We consider all of the evidence presented by the parties (except for evidence which the trial court properly excluded), liberally construe the evidence in support of the party opposing summary judgment, and resolve all doubts about the evidence in that party's favor. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.) We must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment. (*Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1522; *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 961.)

### II.

### As a Noncontracting Party, Rexford May Be Liable for Intentional Interference with Contract

A. Applied Equipment *Does Restrict Noncontracting Parties to Those Having No Social or Economic Interest in the Contract*.

"[I]n California, the law is settled that 'a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract.'" (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148, quoting *Pacific Gas & Electric Co. v. Bear*

5

*Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.)[1]  Citing *Applied Equipment, supra,* 7 Cal.4th at pages 513-514, Rexford argues it cannot be held liable for intentional interference with contract by virtue of having a legitimate economic interest in the contractual relationship.

The California Supreme Court in *Applied Equipment* held that a party to a contract cannot be held liable in tort for conspiracy to interfere with the party's own contract.  (*Applied Equipment, supra,* 7 Cal.4th at p. 514.)  The court reasoned that one party to a contract has no tort duty to another party not to interfere with contract performance; a contracting party's only duty is to perform the contract according to its terms.  (*Ibid.*)  "'To impose tort liability upon the contract breaker because of the involvement of a third person (when liability is limited to contract damages when the contract breaker is acting alone) undermines the policies which have developed limited contractual liability.'"  (*Id.* at p. 517.)

The Supreme Court stated, with emphasis, that "*noncontracting parties*" or "'*a stranger to a contract*'" can be liable in tort for intentionally interfering with the performance of a contract.  (*Applied Equipment, supra,* 7 Cal.4th at p. 513; see also *id.* at p. 514 ["[t]he tort duty not to interfere with the contract falls only on strangers"].)  These statements are quite unambiguous.  The source of ambiguity is two lines from *Applied Equipment* which, when viewed in isolation, seem to restrict tort liability.  The court, in explaining why contracting parties cannot be held liable for intentional interference with contract, stated:  "However, consistent with its underlying policy of protecting the expectations of contracting parties against frustration *by outsiders* who have no legitimate

---

[1]  The elements of a cause of action for intentional interference with contract are (1) a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage.  (*Reeves v. Hanlon, supra*, 33 Cal.4th at p. 1148.)

social or economic interest in the contractual relationship, the tort cause of action for interference with a contract does not lie against a party to the contract." (*Id.* at p. 514.) In the next paragraph, the court stated: "The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance." (*Ibid.*)

The Supreme Court's comments about the liability of noncontracting parties were unnecessary to the holding of *Applied Equipment*, which was limited to whether a party can be liable for conspiracy to interfere with its own contract. The Supreme Court never addressed whether a tort claim for interference with contract could be made against a noncontracting party claiming to have a social or economic interest in the contractual relationship. Cases are not authority for propositions not considered. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680.)

Further, when interpreting an opinion, any one sentence must be viewed in the context of the entire opinion (*International Assn. of Fire Fighter, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 276), and language must be construed in the context of the entire opinion (*Superior Court v. Public Employment Relations Bd.* (2018) 30 Cal.App.5th 158, 188, fn. 10). The context of *Applied Equipment* leaves no doubt the Supreme Court did not intend to restrict tort liability for interfering with contractual relations to noncontracting parties with no social or economic interest in the contract. As we have mentioned, the court placed emphasis on the words "*noncontracting parties*" and "'*stranger to a contract*'" in identifying who may be liable for interference with contract. (*Applied Equipment, supra,* 7 Cal.4th at p. 513.) None of the authorities cited in *Applied Equipment* uses the phrase "outsiders who have no legitimate social or economic interest in the contractual relationship" (see *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, 352-353 (*Woods*)), and no California Supreme Court opinion since *Applied Equipment* has used that phrase.

7

The reasoning of *Applied Equipment* and the purpose for imposing liability for intentional interference with contract further demonstrate the Supreme Court did not confer immunity for that tort on noncontracting parties with a social or economic interest in the contract. The Supreme Court reasoned that imposing tort liability on a contracting party for conspiracy to interfere with contract would obscure the "fundamental differences between contract and tort." (*Applied Equipment, supra,* 7 Cal.4th at p. 516.) "Whether or not a stranger to the contract induces its breach, the essential character of a contracting party's conduct remains the same—an unjustified failure or refusal to perform. . . . Regardless of the presence or absence of third party involvement, the contracting party has done nothing more socially opprobrious than to fall short in meeting a contractual commitment." (*Id.* at pp. 516-517.) When a noncontracting party, including one claiming a social or economic interest in the contract, induces a contracting party to breach, the noncontracting party's conduct does not amount to a failure or refusal to perform. Instead, the noncontracting party has engaged in "socially opprobrious" conduct for which tort liability is imposed; such conduct is socially opprobrious regardless whether the noncontracting party claims a social or economic interest in the contract.

The tort of intentional interference with contract recognizes the importance of an established contractual relationship by protecting a party's interest in receiving performance of the contract. "The courts provide a damage remedy against third party conduct intended to disrupt an existing contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to that agreement." (*Della Penna v. Toyota Motor Sales U.S.A., Inc.* (1995) 11 Cal.4th 376, 392.) A contractual relationship is no less disrupted, and the contracting party's interest in receiving performance of the contract no less impaired, when the noncontracting stranger claims a social or economic interest in the contractual relationship.

8

Another reason the Supreme Court declined to impose tort liability against a party to a contract for conspiracy for its breach was that the prospect of liability for breach of contract created sufficient legal incentive to induce performance. (*Applied Equipment, supra,* 7 Cal.4th at p. 520.) But a noncontracting party, including one claiming a social or economic interest in the contractual relationship, does not face the prospect of liability for breach of contract; for the noncontracting party, it is the prospect of liability for interference with contract that serves as the incentive to refrain from interfering with the contractual relationship.

Conferring immunity from tort liability for interference with contract on a noncontracting party claiming to have a social or economic interest in the contractual relationship could have the anomalous result of leaving a plaintiff without a remedy for tortious conduct. "'To shield parties with an economic interest in the contract from potential liability would create an undesirable lacuna in the law between the respective domains of tort and contract. A party with an economic interest in a contractual relationship could interfere without risk of facing either tort or contract liability. This result is particularly perverse as it is those parties with some type of economic interest in a contract who[] would have the greatest incentive to interfere with it. Such a result would hardly serve the established goal of protecting "a formally cemented economic relationship . . . from interference by a stranger to the agreement."'" (*Popescu v. Apple Inc.* (2016) 1 Cal.App.5th 39, 53 (*Popescu*), disapproved on another ground in *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1148.) As Caliber points out, under the trial court's interpretation of *Applied Equipment*, Caliber cannot sue Rexford for interference with contract because Rexford claims to have an economic interest in the SFC/Caliber contract, but neither can Caliber sue Rexford for breach of contract, because Rexford is not a contracting party.

9

B. *Court of Appeal Opinions Addressing* Applied Equipment

Several Court of Appeal opinions have grappled with the meaning of *Applied Equipment*, and all but one have concluded it does not restrict tort liability for interference with contract to noncontracting parties having no social or economic interest in the contract.

In *Woods, supra*, 129 Cal.App.4th at pages 347-348, two employees of a joint venture sued its majority shareholder for interference with a stock option contract the employees had with the joint venture. The trial court sustained the majority shareholder's demurrer on the ground the majority shareholder was not a stranger to the contract. (*Id.* at p. 349.) The Court of Appeal, reversing the judgment, rejected the claim that under *Applied Equipment* a noncontracting party with an economic interest in the contract is immune from a claim for intentional interference with contract. (*Id.* at pp. 352-353.) The *Woods* court noted that neither *Applied Equipment* nor any of the cases it cited considered the "potential liability of noncontracting parties who had some general economic interest or other stake in the contract." (*Id.* at p. 352.) The *Woods* court concluded it was "highly unlikely" that *Applied Equipment* held or could be construed to hold that "persons or entities with an ownership interest in a corporation are automatically immune from liability for interfering with their corporation's contractual obligations." (*Id.* at p. 353.)

The *Woods* court, in addressing *Applied Equipment*, observed that the source of the phrase "outsiders who have no legitimate social or economic interest in the contractual relationship" (*Applied Equipment, supra,* 7 Cal.4th at p. 514, italics omitted) is "a mystery" with "no apparent connection to the issues." (*Woods, supra*, 129 Cal.App.4th at p. 353.) The *Woods* court surmised that the *Applied Equipment* court used the term stranger to a contract interchangeably with the terms "'noncontracting parties'" and "'third parties.'" (*Ibid.*) We agree.

10

In *Asahi Kasei Pharma Corp. v. Actelion Ltd.* (2013) 222 Cal.App.4th 945, 963-964 (*Asahi*), the Court of Appeal held that a corporate defendant that had acquired as a subsidiary an entity with an existing license agreement was not immune from suit for interference with that agreement under the theory the corporate defendant was not a stranger to it. The *Asahi* court agreed with *Woods* that "'[a] stranger,' as used in *Applied Equipment*, means one who is not a party to the contract or an agent of a party to the contract." (*Id.* at pp. 963-964.)

In *Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 872-873, 883, the Court of Appeal upheld a jury verdict in favor of the plaintiff on its claim that the defendant/franchisor interfered with the plaintiff's contract to sell a dealership franchise. The court rejected the argument the defendant could not be liable for interference with contract because the defendant, by virtue of its right to approve the successor dealer, was not a stranger to the contract. (*Id.* at p. 883.) The court, after discussing *Woods* with approval, stated, "we also decline to extend the holding of *Applied Equipment*." (*Id.* at p. 884.)

The Court of Appeal in *Popescu, supra*, 1 Cal.App.5th at pages 39 and 53 also declined to read *Applied Equipment* as restricting the class of nonparties who could be liable for intentional interference with contract. The plaintiff in *Popescu* alleged the defendant (Apple) had interfered with his employment relationship by taking affirmative steps to convince the employer, which had a research and development agreement with Apple, to terminate the plaintiff for his resistance to Apple's alleged anti-competitive conduct. (*Id.* at p. 44.) The Court of Appeal reversed a judgment dismissing the plaintiff's complaint, which had alleged, among other things, intentional interference with contract. (*Id*. at pp. 44, 49-50.)

In *Popescu*, the court rejected Apple's contention that under *Applied Equipment* Apple could not be liable because it had an economic interest in the plaintiff's employment contract, and declined to read *Applied Equipment* as restricting liability for

11

interference with contract to those noncontracting parties not having a legitimate economic interest in the contract. (*Popescu, supra*, 1 Cal.App.5th at p. 53.) The court concluded the "stranger to a contract" language in *Applied Equipment* "is used as a synonym for 'noncontracting party'" and "[a]n extension of *Applied Equipment*'s holding to immunize a third party from tortious interference claims simply because the third party asserts some economic or other interest in a contract would significantly undercut the tort itself and the public policy underlying it." (*Ibid.*) We find this reasoning to be persuasive.

Most recently, in *Redfearn v. Trader Joe's Co.* (2018) 20 Cal.App.5th 989, 994 (*Redfearn*) disapproved on another ground in *Ixchel Pharma, LLC v. Biogen, Inc. supra*, 9 Cal.5th at p. 1148), the plaintiff, a broker for manufacturers of food products, alleged the defendant, a retailer of food products, caused two of the plaintiff's clients to terminate their contracts with the plaintiff. The trial court sustained, without leave to amend, a demurrer to the plaintiff's cause of action for intentional interference with contract on the ground the defendant was not a stranger to the contract because performance of the broker contracts depended on the defendant purchasing the clients' products. (*Id.* at p. 995.) The Court of Appeal reversed. After analyzing the foregoing cases at length, the court concluded: "In, sum, consistent with *Popescu . . . , Asahi . . . ,* and *Woods . . . ,* we conclude that one, like [the defendant] here, who is not a party to the contract or an agent of a party to the contract is a 'stranger' for purpose of the tort of intentional interference with contract. A nonparty to a contract that contemplates the nonparty's performance, by that fact alone, is not immune from liability for contract interference. Liability is properly imposed if each of the elements of the tort are otherwise satisfied." (*Id.* at p. 1003, fn. omitted.) We reach the same conclusion.

The outlier among California Court of Appeal cases is *PM Group, Inc. v. Stewart* (2007) 154 Cal.App.4th 55, 65 (*PM Group*). In that case, the Court of Appeal relied on *Applied Equipment* to hold that if a contract depended on a noncontracting

12

party's performance, then the noncontracting party had an economic interest in the contract and could not be liable for interfering with it. The plaintiffs, who were concert promoters, entered into a series of contracts with subpromoters; those contracts expressly provided for a concert tour by the singer Rod Stewart. (*Id.* at p. 58.) Stewart and his agents ultimately decided to cancel the tour. (*Id.* at pp. 59-60.) The plaintiffs sued Stewart and his agents for intentional interference with the plaintiffs' contracts with the subpromoters. (*Id.* at p. 60.) A jury awarded the plaintiffs $1.6 million on the interference cause of action. (*Id.* at p. 61.) The Court of Appeal reversed on the ground that, as a matter of law, Stewart and his agents could not have interfered with the contracts between the plaintiffs and the subpromoters. (*Id*. at p. 65.) Citing *Applied Equipment*, the court concluded, with no analysis, "[b]ecause the subcontracts at issue here provided for Stewart's performance, neither Stewart nor his agents can be liable for the tort of interfering with the subcontracts." (*Ibid.*)

*PM Group* has been distinguished on the ground the alleged contractual interference occurred through failure to perform (i.e., cancellation of the concert tour) as opposed to affirmative misconduct (*Redfearn, supra*, 20 Cal.App.5th at pp. 1001-1002) and on the ground that performance by Stewart and his agents was expressly contemplated by and necessary to the contract with the subpromoters (*Asahi, supra,* 222 Cal.App.4th at p. 965, fn. 14; see *Redfearn, supra*, at p. 1001 ["[*PM Group*] stated a noncontracting party is not a stranger-interloper when that party's performance is necessary to the plaintiff's contract performance"]). *PM Group* has been read as standing only for the proposition, not applicable here, that "a contracting party could not be held liable for interfering with the performance of subcontracts if that claim hinged on the defendant's failure to perform on the original contract." (*United Nat. Maint. v. San Diego Convention Center* (9th Cir. 2014) 766 F.3d 1002, 1008.)

Here, unlike *PM Group*, the alleged interference was undertaken through affirmative conduct, and the SFC/Caliber contract did not expressly contemplate any

13

action or performance by Rexford. Although the SFC/Caliber contract is a subcontract, Caliber's claim for interference with that contract did not hinge on Rexford's performance of the contract between Rexford and SFC. Caliber's interference with contract claim is not based upon anything Rexford did or did not do in performing Rexford's contract with SFC, but on the allegation, unrelated to contract performance, that Rexford told SFC to take Caliber off the job. To the extent *PM Group* holds a noncontracting party with an alleged economic interest in the contract cannot be liable for intentional interference with contract, we respectfully disagree with that case and decline to follow it.

Rexford relies on a nonpublished United States District Court case, *Synergy Project Management, Inc. v. City and County of San Francisco* (N.D. Cal. May 16, 2018, No. 17-cv-06763-JST) 2018 U.S.Dist. Lexis 82817, in which the court concluded a contractor could not be liable for interfering with a subcontract. Relying on *PM Group* and two federal district court cases, the court concluded the contractor could not be liable for intentional interference because performance of the subcontracts depended on the contractor's performance. (*Id.,* 2018 U.S.Dist. Lexis 82817 at p. *15.)

We are not bound by *Synergy* or any other decision of the federal district courts and circuit courts of appeals. (*Southern California Pizza Co., LLC v. Certain Underwriters at Lloyd's, London etc.* (2019) 40 Cal.App.5th 140, 151; *People v. Uribe* (2011) 199 Cal.App.4th 836, 875.) Nor do we find *Synergy* to be persuasive. In *Synergy*, the court disregarded *Asahi* and *Redfearn*, did not mention *Woods* or *Popescu*, and engaged in no analysis of *Applied Equipment*. In *United Nat. Maint. v. San Diego Convention Center, supra*, 766 F.3d 1002, the Ninth Circuit Court of Appeals rejected the argument that a noncontracting party with an economic interest in the contract cannot be held liable for intentional interference with contract. (*Id.* at pp. 1007-1008.) The Ninth Circuit stated, "California courts have repeatedly held that 'in California, the law is settled that "a stranger to a contract may be liable in tort for intentionally interfering with

14

the performance of the contract"'" and "California courts have repeatedly held that parties with an economic interest in a contractual relationship may be liable for intentional interference with that contract." (*Ibid.*)

We conclude that a defendant who is not a party to the contract or an agent of a party to the contract is not immune from liability for intentional interference with contract by virtue of having an economic or social interest in the contract.

## III.

### Caliber Raised a Triable Issue of Fact as to Whether Rexford Interfered With the SFC/Caliber Contract.

A. *Rexford Did Not Have to File a Notice of Appeal to Challenge the Trial Court's Evidentiary Rulings.*

Rexford argues that Caliber failed to show a triable issue of fact as to whether Rexford did anything to interfere with the SFC/Caliber contract. As evidence of Rexford's alleged interference with the SFC/Caliber contract, Caliber submitted a declaration each from Gilchriese and Neilan and portions of Gilchriese's deposition transcript. Rexford challenges the trial court's ruling that this evidence comes within an exception to the hearsay rule and is admissible.

Caliber contends that Rexford cannot challenge the trial court's evidentiary ruling because Rexford did not file a notice of appeal. A respondent must file a notice of appeal and become a cross-appellant if the respondent seeks affirmative relief by way of appeal. (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 585.) But Code of Civil Procedure section 906 permits a respondent, without filing a notice of appeal, to assert a legal theory on appeal that will result in affirmance. (See *Preserve Poway v. City of Poway, supra*, 245 Cal.App.4th at p. 586.) "[T]he exception in Code of Civil Procedure section 906 applies where a respondent asserts an alternate legal theory upon which the judgment may be affirmed, notwithstanding the court's resolution of the

15

appellant's contentions in the appellant's favor." (*Ibid.*) Rexford's challenge to the trial court's rulings comes within this exception.

### B. *Gilchriese's Deposition Testimony and Declaration Were Admissible; Neilan's Declaration Was Not.*

In his deposition, Gilchriese testified that, in October 2018, "Steve Fodor told me that Andy [Wilson] at Rexford directed him to kick us [Caliber] off the job or hire somebody else." When asked whether Wilson had directed Fodor to breach SFC's contract with Caliber, Gilchriese testified, "He just explained to me that Andy [Wilson] directed him to get somebody else to finish the work."

Gilchriese stated in his declaration: "Mr. Fodor told me that Andy Wilson of Rexford directed SFC to get another paving company to finish the work. Moreover, as I testified in my deposition, 'Steve Fodor told me that Andy at Rexford directed him to kick us off the job or hire somebody else. I forgot exactly how he put it.' My testimony was in response to the question: 'Did you hear that Rexford had instructed SFC to terminate its contract with Caliber?' . . . I also testified at my deposition that Mr. Wilson directed SFC to 'get somebody else to finish the work.' . . . That was, *in substance*, what Mr. Fodor told me."

Neilan stated in his declaration: "Darin Maddox (SFC superintendent/ project manager at the property) stated in a conversation with me that 'Rexford wanted Caliber off the job.' This fact was disclosed to Rexford in Caliber's Response to Special Interrogatory No. 1, which states: [¶] 'Steve Fodor told Darin Gilchriese that Andy Wilson instructed/directed STEVE FODOR CONSTRUCTION, INC. ("SFC") to cancel the contract with CALIBER and replace CALIBER with another paving contractor. In addition, Darin Maddox (SFC superintendent/project manager at the property) stated in a conversation with Jeff Neilan that "Rexford wanted Caliber off the job."'" The quoted testimony of Gilchriese and Neilan is double hearsay. In the case of Gilchriese, the two levels of hearsay are (1) Wilson's statement to Fodor about kicking Caliber off the job

16

and (2) Fodor's statement to Gilchriese about what Wilson had said to Fodor. In the case of Neilan, the two levels of hearsay are (1) statements made by a Rexford representative to Maddox about wanting Caliber off the job and (2) Maddox's statement to Neilan about what Maddox had been told by the Rexford representative.

Double hearsay is not categorically inadmissible; instead, a double hearsay statement is admissible if each level of hearsay comes within an exception to the hearsay rule. (*People v. Anderson* (2018) 5 Cal.5th 372, 403; *People v. Zapien* (1993) 4 Cal.4th 929, 951-952.) In *People v. Anderson, supra*, at page 403, the California Supreme Court concluded the double hearsay evidence was admissible because the first level came within the exception for statements of a party (Evid. Code, § 1220) and the second level came within the exception for prior inconsistent statements (*id.*, § 1235). "'[M]ultiple hearsay consisting of a prior inconsistent statement and an admission of the defendant' is admissible." (*People v. Anderson, supra*, at p. 403.)

The first level of hearsay for the testimony of both Gilchriese and Neilan comes within the hearsay exception for statements made by a party opponent. (Evid. Code, § 1220.) "The evidence was of statements, defendant was the declarant, the statements were offered against him, and he was a party to the action. Accordingly, the hearsay rule does not make the statement inadmissible." (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1049.) Here, the evidence was of statements; the declarant was a representative of Rexford, a defendant; the statements were offered against Rexford; Rexford is a party.

The second level of hearsay for Gilchriese's testimony comes within the hearsay exception for prior inconsistent statements. (Evid. Code, § 1235.) A declarant's statements that are inconsistent with the declarant's testimony are admissible as substantive evidence if the requirements of Evidence Code section 770 are met. (*People v. Brown* (1995) 35 Cal.App.4th 1585, 1596-1597; *People v. Sanders* (1990) 221 Cal.App.3d 350, 402, fn. 10.) For prior inconsistent statements to be admissible,

17

Evidence Code section 770 requires either (1) "The witness was so examined while testifying as to give him an opportunity to explain or deny the statement" or (2) "The witness has not been excused from giving further testimony in the action."

Fodor's statement to Gilchriese about what Wilson had said is inconsistent with statements made by Fodor in his declaration submitted in support of Rexford's motion for summary judgment. Fodor stated in his declaration: "I never told Darin Gilchriese that Andy Wilson or anyone else at Rexford had directed me to terminate the contract with Caliber. No one told me to kick Caliber off the job." Fodor had the opportunity in his declaration to explain or deny the statement attributed to him by Gilchriese.

The second level of hearsay for Neilan's declaration does not, however, come within the inconsistent statement exception because there was no testimony from Maddox to create an inconsistency. Rexford did not submit a declaration from Maddox in support of the summary judgment motion, and neither Rexford nor Caliber submitted a deposition transcript for Maddox.[2]

Neilan's declaration was therefore inadmissible to show that Rexford interfered with the SFC/Caliber contract. Gilchriese's declaration and deposition testimony were admissible, however, for that purpose. (See *Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1151 [evidence of inconsistent statements and statements of party opponents are admissible to oppose summary judgment motion].)

---

[2] Maddox's statement to Neilan does not come within the exception for statements made by a party opponent because, to come within that exception, the statement must have been offered against the declarant in an action in which the declarant is a party. (Evid. Code, § 1220; see Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2019) ¶ 8:1150, p. 8D-43.) Although Maddox was SFC's superintendent and on-site project manager, his statements to Neilan were not offered against SFC; they were offered against Rexford in opposition to its summary judgment motion.

C. *Gilchriese's Declaration and Deposition Testimony Were Sufficient to Raise a Triable Issue of Material Fact.*

Admissibility of the evidence is just the first step; the question remains whether Gilchriese's declaration and deposition testimony were enough to meet Caliber's burden of showing a triable issue of material fact. A defendant moving for summary judgment has the initial burden of showing that at least one element of a cause of action has no merit or there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the moving defendant has met that burden, the burden shifts to the plaintiff to show there is a least one triable issue of material fact to the cause of action or to a defense. (*Ibid.*)

Two points on the standard of review are particularly significant for this case. First, in reviewing the trial court's decision to grant summary judgment, we liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor. (*Hughes v. Pair, supra*, 46 Cal.4th at p. 1039.) Second, we must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment. (*Essex Ins. Co. v. Heck, supra*, 186 Cal.App.4th at p. 1522; *Nadaf-Rahrov v. Neiman Marcus Group, Inc., supra*, 166 Cal.App.4th at p. 961.)

Reasonable inferences drawn from Gilchriese's declaration and deposition testimony include: (1) Rexford instructed SFC to kick Caliber off the paving job and hire a different paving subcontractor and (2) SFC followed those instructions and hired a different paving subcontractor to complete the repaving project. These inferences are enough to raise a triable issue whether Rexford interfered with the SFC/Caliber contract.

Rexford argues Gilchriese's declaration and deposition testimony are merely circumstantial evidence. Circumstantial evidence is neither incompetent nor inadmissible; it is simply evidence that proves the principal fact through inference. (1 Witkin, Cal. Evid. (5th ed. 2012) Circumstantial Evidence, § 1, pp. 358-359.)

19

Gilchriese's declaration and deposition testimony tend to prove the principal fact—Rexford interfered with the SFC/Caliber contract—by means of reasonable inference.

Rexford argues it is speculation to draw the inference from Gilchriese's declaration and deposition testimony that Rexford instructed SFC to hire a different subcontractor. Speculation generally means a "guess," that is, "a conclusion not based upon a logical, reasonable, and therefore, lawfully drawable inference from the evidence." (*People v. Bohana* (2000) 84 Cal.App.4th 360, 369.) Gilchriese declared that SFC canceled the paving work on September 13, 2017, and it was undisputed SFC hired a new paving subcontractor soon thereafter. According to Gilchriese's declaration and deposition testimony, Rexford had instructed SFC to kick Caliber off the job and hire a different subcontractor to complete the repaving project. From those facts, it is not a guess to draw the inference that SFC kicked Caliber off the job and hired a new paving subcontractor in response to Rexford's instruction.

Rexford also argues that inference is contrary to the "undisputed" fact that Caliber abandoned the paving job. It was undisputed that Caliber left the jobsite on the morning of September 11, 2017; whether Caliber was justified in doing so was disputed. Caliber produced evidence it was justified in leaving the jobsite because trucks and trailers parked in the jobsite had prevented it from starting work in a timely fashion.

## DISPOSITION

The judgment is reversed and the matter is remanded.  Appellant to recover costs on appeal.

FYBEL, J.

WE CONCUR:

ARONSON, ACTING P. J.

IKOLA, J.